"White, J.
The controversy in this case is between Bundy, claiming as first mortgagee, subsequent judgment creditors, and creditors claiming under the second mortgage.
Two questions arise for consideration: (1) Whether the execution and record of the mortgage of December 5,1874, to Bundy give him priority ? and, (2) If not, does the recognition of the first mortgage in the second, of April 17, 1875, have that effect?
As to the first question: The consideration upon which Bundy indorsed the notes as surety of the corporation, was that the latter should give him a mortgage upon its property, conditioned that it would pay the notes at maturity, and save him harmless on account of his indorsements. The execution by the stockholders of the first mortgage was the attempted fulfillment of the agreement on the part of the corporation.
The Opliir Iron Company was incorporated under the act of April 12,1858, providing for the creation and regulation of manufacturing companies. S. & C. 301, 304. Under that act the directors of the company are required to be stockholders ; and while it is declared “ the directors shall have the general management of the affairs of the company,” yet they are made “subject alwmys to the control of the stockholders” in reference to such management.
The mortgage to Bundy now in question, not being made *312 in the name of the corporation, cannot, as against it, be regarded as a legal mortgage; but it is a good, equitable mortgage against the corporation. And if such direction were necessary, it might be considered as equivalent to a direction by the stockholders to the proper officers to make a mortgage in the name of the corporation to Bundy. But such direction was not necessary from the stockholders. The directors, under the agreement by which they obtained Bundy’s indorsements of the notes of the corporation, were bound to secure him by the mortgage of the corporation. This they failed to do, by sheer mistake, in the form of executing the mortgage, which it was competent for a court of equity to correct; and which it was their duty to correct without the action of the court. Clayton v. Freet, 10 Ohio St. 544.
If it were not for our statute on the subject of mortgages, this equitable mortgage would prevail over all lien-holders and other claimants, except bona fide purchasers, for value. But it has been held, in a long series of decisions, that a mortgage has no effect, under the statute, either in law or equity, as against subsequently acquired liens, until its execution according to the statute, and its delivery to the recorder of the proper county for record. Strang v. Beach, 11 Ohio St. 283; Bercaw v. Cockerill, 20 Id. 163.
But such execution and delivery for record are not required as between the original parties or their heirs. Bloom v. Noggle, 4 Ohio St. 45; Sidle v. Maxwell, Id. 236.
The second question is: Does the recognition of the first mortgage in the second have the effect to give it priority ?
We think this question must be answered in the affirmative. The second mortgage was executed in due form by the corporation, and was made expressly subject to the mortgage to Bundy. Hence, all subsequently acquired liens that are subject to the second mortgage are necessarily also subject to the first. Coe v. Railroad Co., 10 Ohio St. 374; Bercaw v. Cockerill, 20 Id. 166.
It is, however, claimed on behalf of some of the judgment creditors that the second mortgage was not accepted by the mortgagees. In. the first place it may be said that no express *313 acceptance is necessary. The assent of the mortgagees may be implied. Less than a fourth of the mortgagees filed answers in the case, and three of these, as already remarked, claim under the mortgage. The remainder of the answering defendants make no reference to the second mortgage; but set up their judgment liens, and claim that such liens are paramount to the first mortgage, thus ignoring the existence of the second. It is not necessary to the validity of the second mortgage that all the mortgagees should accept under it or assent to it. It is made to. the creditors severally to secure their respective claims; and those who accept it are entitled to its benefits without regard to those who decline to take under it. The refusal of some to accept cannot defeat the rights of those who do accept; and, if it takes effect as to any of the mortgagees, it inures to their benefit and to the benefit of the first mortgage.
From the testimony in the bill of exceptions, it appears that the plaintiff, Bundy, saw a number of the creditors and told them that he had a mortgage of record securing him the ten thousand dollars above referred to, and that unless an extension could be obtained with the consent of all the creditors, the company would execute a mortgage,- subject to his, upon all its lands, in behalf of all its creditors, so that they would all stand alike. That several of the creditors with whom he conversed said that would be the right way to do; that none of the creditors objected to having the second mortgage issued as above stated; that none consented, and none knew of its execution. The effect of this evidence, as we understand it, is that none knew of the execution of the mortgage at the time it was made, or expressly consented to its execution otherwise than by stating that it would be the proper thing to do in case the extension was not obtained. In another part of his testimony, as reported, he is said to have stated that “none of the creditors ever recognized or claimed under the mortgage.” This language is ambiguous, and is certainly inaccurate in one respect, for at the time of the trial several of the creditors had filed answers in which they recognized and claimed under the second mortgage. The probability is that the witness means no more than this, that none of the creditors with whom *314 he conversed after the execution of the mortgage declared their recognition of it, or that they claimed under it. At any rate, from a consideration of the whole evidence, we think that the assent of a large part of the creditors must be presumed, upon the principles laid down in Mitchell v. Ryan, 3 Ohio St. 377.
Whether Bundy does not stand in such relation to the second mortgage, as to entitle him to insist upon it, both as against the corporation and -the subsequent judgment creditors, without reference to its acceptance, may admit of question. But it is a question that need not now be considered. Upon the case as made in the record; the court erred in denying to Bundy the priority to which he was entitled. The judgment must therefore be reversed; and the cause is remanded for further proceedings.

Judgment accordingly.

Johnson, J., being formerly of counsel did not sit in the case.